DORE, Judge.
This suit arises out of personal injuries sustained by the plaintiff and the amount of damage to his automobile as a result of the alleged drunken and negligent driving by Edgar Melvin of his Buick sedan, which was insured against public liability by the American Fire and Casualty Company to the extent of $10,000. The plaintiff alleges that on or about June 4, 1947, his automobile was properly parked in front of the night club of Bud Kelly, near the Mississippi linej in the Parish of Tan-gipahoa, and that the defendant, Edgar Melvin, had run into the left rear fender of his automobile, the two being interlocked, petitioner showing that the defendant had run into several other automobiles at or about the same time, and was in an intoxicated condition. Plaintiff further alleges that he thereupon went over to the defendant’s automobile for the purpose of disengaging the cars, and for the purpose of conversing with the defendant in an attempt to prevent him from causing further damage, and in an attempt to stop his reckless driving. Plaintiff alleges that this occurred at approximately 2:30 to 3:00 o’clock P.M., on a clear day, and that defendant saw and well knew 'him and answered and was conversing with petitioner as he was doing this, but that nevertheless, the defendant, acting in reckless abandon, lost control of his automobile, throwing it deliberately into’ plaintiff and another parked car, jamming plaintiff’s leg between defendant Melvin’s automobile and the other parked car, and inflicting severe lacerations and bruises, which are detailed in the petition. A summary of his alleged injuries are to the effect that 'he was hospitalized for 25 days in Beacham Memorial Hospital, Magnolia, Mississippi, during which time he lingered between life and death and spent 18 days under an oxygen tent, and while in this condition, received a ■blood transfusion, numerous operational work, and suffered considerable pain and suffering, and permanent disability; and that after being hospitalized at Beacham Memorial Hospital, it was necessary for him to transfer to Touro Infirmary for an operation to his right leg, which was performed on July 28, 1947, and that as a result thereof, he remained in that hospital for several weeks thereafter. Plaintiff alleges that he was disabled and unable to work for four months, causing a loss of earnings of $600 per month, or a total of $2400. He claims $7500 for his pain and suffering; $7500 for his personal injuries; $7500 for his permanent disabilities; $2841.91 for his medical and hospital expenses ; and $15 for minor damages to his automobile; making a total of $27,756.91, for which 'he sues the defendant, Edgar Melvin, and his insurer, The American Fire and Casualty Company.
The defendants, in their answer, show that the liability of the insurer under the policy covering Edgar Melvin is in the sum of $10,000. In their answer on the question of liability, the defendants urge two special defenses. The first-defense is that prior to the incident, which incident is admitted, Edgar Melvin had been in Bud Kelly’s night club, and had been severely beaten about the head by one Clarbon Machón, the operator of the club, and then beaten and thrown through the door of the club by a number of men, and as a result of such treatment, was in a dazed and stuporous condition to the extent that 'he did not know what he was doing, had no recollection of the incident sued upon and could not be legally responsible for such actions.
The second defense, which is urged in the alternative, in the event it should be found that Melvin was legally responsible for his actions, is that plaintiff was guilty of contributory negligence in that he knew that Melvin had been severely beaten about the head just prior to the incident and that Melvin had gotten in his car and was running into and backing into parked cars at random, and with such knowledge, deliberately placed himself in a position of imminent peril by attempting to reach in through the left door window of the automobile in an attempt to remove the keys from the ignition lock of the automobile, and that’it was while he was attempting to *83 accomplish that purpose that he was injured.
After trial of the case, the'District Court, without giving written reasons for judgment, granted judgment in favor of the plaintiff in the total amount of $10,206.91, itemized as $2391.91 for medical expenses, $1800 for loss of wages, $15 for damage to plaintiff’s automobile, and $6000 for personal injury, pain and suffering. From this judgment, the defendants have appealed. The plaintiff has answered the appeal, praying that the judgment be increased by the sum of $9500 so as to make the total award $19,706.91.
On the question of liability, a review of the evidence shows that the defendant, Melvin, entered the cafe part of Kelly’s night club just prior to the incident and ordered some raw oysters. The preponderance of the evidence shows that at that time he was under, the influence of alcohol. The oysters were served to him and after eating part of his raw oyster cocktail, he became ill and thereupon vomited on the floor of the cafe. As a result, it appears that the operator, Clarbon Machón, reprimanded him in some manner, and finally ejected him from the cafe. The plaintiff, in a statement made on June 7, 1947, three days after the occurrence, stated: “On Wednesday, June 4, 1947, at about 2:30 P.M., I was at the club, having reported for work at 2:00 P.M. (he was employed as a “stick man” in a dice game at an alleged salary of $20.00 per night for seven nights per week.) Edgar Melvin had been in the restaurant part of the club. I saw him but did not speak with him. He appeared to be drunk to me. I was reading a newspaper when Melvin and the restaurant operator, Clarbon Machón, got into an argument. I did not know what the argument was about and took no part in it. Machón and Melvin got intó a fight, in which Melvin was knocked to the floor. Melvin got up and walked out of the restaurant cussing. I heard a crash or two and I heard some remarks about Melvin running into automobiles. I went outside and saw Melvin in his car alone. He had his car parked between mine on the North and another car on the South side of mine. I saw him back straight out to where his-rear wheels touched the highway, and then he drove forward and appeared to deliberately run into the back of the car parked to the south. * * * He then put his. car into reverse back toward the road and then came forward and struck the left rear of my car with the left center front of his car. His bumper appeared to be hung in mine. I decided I would try to-take the keys from his car and got to his left door and reached in for the keys. He put the car in reverse and got free from my car and spun his wheel so that his car headed back to the first car he struck to try and jam me between the cars. I hung unto the door because I was afraid if I fell I would go under his car. As he backed I was facing into Melvin’s car and as he -brushed the rear of the parked car, my right -leg and hip was caught between the-two vehicles. As soon as he cleared the parked car, I dropped to the ground and rolled under the parked car. By the time I could roll over and straighten up his car was gone. I skinned both elbows, my left knee was skinned and my right leg was badly cut above the knee. I was not unconscious at any time, but was sore all over. Henry Delahoussie, the manager of the club room took me to Beacham’s Hospital, . Magnolia, Miss, where I remained about 24 hours. Dr. M. B. Small has taken care of me since I left the hospital.”
The club operator, Machón, denies that he struck the defendant Melvin, but admits that he did eject him from the cafe' and had to use some force in doing so. In> any event, the preponderance of the evidence does not show that the defendant Melvin was brutally beaten about the head and face to the extent that he was rendered! into a condition of amnesia, as advanced in the first special defense. Several absolutely -neutral witnesses from Mississippi, such as,, Henry DeLaHoussaye, and Paul McGeehee,. who were present at the time of the incident, testified positively, by deposition, that they did not see anyone slug or beat Melvin, and did not see any cuts bruises or contusions about his eyes, head or body, and: they were in a position to have seen what happened. ■ In so far, as plaintiff’s state- *84 m'ent to the effect that the club operator, Machon, knocked down the defendant Melvin, in his testimony he qualifies that statement by saying that he had been so informed, although he did not see the actual occurrence.
The fact remains, however, that the plaintiff himself was in no way connected with the happening in the restaurant and with the ejection of the defendant Melvin. Moreover, the preponderance of the evidence, as stated above, is to the effect that Meivin was under the influence of alcohol when he' entered the restaurant, and that whatever happened to him was caused by his own actions thereafter, and not by the wrongdoing of the club operator, or of anybody else. There is no showing that he was brutally beaten to start with, but even so, whatever happened to him was brought about by his own wrongdoing, and certainly this cannot be interposed as' a defense to plaintiff’s suit.
It seems clear to us, from the. evidence that what actually happened was that the defendant Melvin entered the cafe under the influence of alcohol, which was apparently consumed elsewhere. It is shown that he was - in the habit of going, on sprees. 'After entering the restaurant, and securing a raw oyster cocktail, he vomited on the- floor, and naturally, aroused the anger .of the cafe operator, Machon, and no doubt, harsh words of some kind were then exchanged, whereupon the defendant was ejected, in probably a rough manner, and left, not only under the influence of alcohol, but also in a state of extreme anger.. In this highly irrational state of mihd,'he entered his automobile, and because of his condition, handled it with recklessness and abandon, hitting this car and that car, and 'that finally, when the plaintiff came out to try to appease him and to remove the keys from his car, and to disengage defendant’s car from plaintiff’s car, the defendant, instead of listening to reason, became even more infuriated, and thereupon tried to, and succeeded, in driving down the plaintiff. The defendant will have the Court believe that he remembered nothing of his actions, but his testimony will show that after m'aking this • statement in his testimony, he ■' recalled' the date of the accident, the place, the time, and the fact that the: plaintiff was injured in the accident. We see no merit to the first special defense,.
As to' the second special defense^ pleaded in the alternative, of contributory negligence, we do not feel that any lengthy discussion thereof is necessary. Sufficeth it to say that the plaintiff, Mr. LeTard, acted in the same manner as any reasonable man would, in an attempt to protect his property from a wrongdoer, especially in view of the fact that he was well acquainted with the defendant Melvin, and had every reason to believe that he could stop him from his reckless maneuvers and could thereby protect, not only his property, but the property of others, and also the defendant himself. We can see nothing unreasonable on the part of the plaintiff’s actions. Certainly, we cannot say that he could anticipate that Melvin would have acted as he did. We therefore find no merit to the plea of contributory negligence.
In their brief, the defendants set forth that in the event liability is found, the quantum of. damages should be reduced, and in support of their contentions, they cite, several cases involving tort actions of a similar nature wherein the' damages awarded were less than the dámages awarded by' the District Court in this case. On the other hand, in the brief of plaintiff, it is contended that according to the jurisprudence, especially Federal jurisprudence, the damage awarded should be increased. They too cite several cases in support of their contention' and call attention to the tendency today of increasing awards heretofore made ‘due to the smaller purchasing power of a dollar and the higher cost of treatment and living expenses.
Having considered these authorities, and the argument contained in the briefs of both the plaintiff and the defendant, and having considered ■ the actual showing of the facts of injury by the evidence, we have come to the conclusion that the plaintiff was earning an average salary of $455 per month, $15 per day, 7 days per week, and that because of his disability, he was *85 idle for a period of four rrióñth's, and-that (he is therefore entitled tó $1820 for loss of wages. We agree with the trial'judge that the medical expenses established by the evidence is in the sum of $2391.91, and that the item of $15 for damage to the automobile has been established, and' there seems to be no complaint on the part of plaintiff as to these two items. For personal injury, pain and suffering, the trial judge awarded the sum of $6000. In view of the fact that' it has not been shown or even contended" that the plaintiff has sustained any permanent injury, and it is admitted that he did return to his duties after four months, and even though he did undoubtedly suffer much pain, especially during the time that he was confined to the Beacham Hospital,- including 18 days under an oxygen tent, we believe that the award is somewhat excessive and that it would be in keeping with the jurisprudence to reduce the award to the sum of $4000, thus making a total award o'f $8226.91. '
For the reasons assigned, the judgment appealed from is amended by reducing the award from $10,206.91 to $8,226.91, and as thus amended, the judgment is affirmed.